**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG HATFIELD, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-07248-MMP |
| CVS PHARMACY, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT CVS PHARMACY INC.'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

i

I.      **INTRODUCTION**

Plaintiff Craig Hatfield brings this putative class action seeking compensation for alleged economic injury resulting from the purchase of CVS-branded, over-the-counter ("OTC") Maximum Strength Mucus Extended Relief guaifenesin product ("Product"). FDA expressly approved the Product formulations and specifications, and Plaintiff does not contend that the Product he purchased was anything other than exactly what FDA approved. Nevertheless, he claims that all Product, sold as approved, is adulterated and worthless because it allegedly contains benzene. Plaintiff's claims must be dismissed for several reasons.

First, Plaintiff lacks Article III standing because he fails to plead that he purchased Product containing benzene. The Complaint relies entirely on the assumption—disproved by publicly available, judicially noticeable government documents—that all Product is formulated with an inactive ingredient containing benzene, and Plaintiff fails to allege any Product testing or other fact demonstrating the presence of benzene in any Product. Second, the Food, Drug, and Cosmetic Act ("FDCA") expressly preempts Plaintiff's claims that CVS had to alter the Product label or that the Product's manufacture violated current good manufacturing practices ("cGMP"). Put simply, the FDCA preempts state law claims premised on allegedly adulterated product when FDA approved the product as safe and effective, knowing it could contain a certain threshold amount of benzene. *See Eisman v. Johnson & Johnson Consumer, Inc.*, 2025 WL 241024, at *5 (C.D. Cal. Jan. 17, 2025). The FDCA also impliedly preempts Plaintiff's claims because CVS cannot unilaterally change the Product's formulation or labeling, and because Plaintiff's claims, at bottom, seek to privately enforce the FDCA. Third, even if his claims were not preempted— they are—Plaintiff fails to state a claim upon which relief can be granted because he does not plausibly allege a violation of the FDCA, which is the purported basis for each of his claims.

1

## II.     BACKGROUND

FDA must approve all generic OTC guaifenesin-containing drugs before they can be sold in the United States. *See* 21 C.F.R. § 310.502(a)(14) (requiring time-controlled drugs, like the Products here, to be approved by application to FDA). To obtain that approval, a generic manufacturer must submit an Abbreviated New Drug Application ("ANDA"). FDA regulations require an ANDA to "identify and characterize the inactive ingredients in the proposed drug product and provide information demonstrating that such inactive ingredients do not affect the safety or efficacy of the proposed drug product." 21 C.F.R. § 314.94(a)(9)(ii). An ANDA also must include descriptions of manufacturing procedures, product specifications, and proposed labeling. *See id.* §§ 314.50(d)(1)(ii)(a), 314.94(a)(9)(i), 314.94(a)(8). FDA approval requires a determination that the product is safe and effective when manufactured pursuant to the specifications and processes set forth in the product's ANDAs. *See* 21 U.S.C. § 355(b), (j). Changes to a product's formulation following initial FDA approval require additional FDA approval. *See* 21 C.F.R. §§ 314.70(b)(1)-(2), 314.97(a).

As of the date Plaintiff claims he bought the Product, FDA had approved two generic drug manufacturers' Product ANDAs. Ex. A, Amneal ANDA Page (ANDA 207342); Ex. B, Granules ANDA Page (ANDA 213420); Ex. C, NDC Directory (filtered for CVS-branded maximum strength guaifenesin products).[1] The Product labels identify "carbomer" as an inactive

---

[1] In May and June 2025, after the dates on which Plaintiff allegedly purchased the Products, FDA approved two additional manufacturers' ANDAs. *See* Ex. C, NDC Directory, at Rows 42932, 43011. Like Granules, these manufacturers use the same carbomer used in brand Mucinex, which Plaintiff concedes does not contain benzene. *See* Ex. D; Ex. J; Ex. I; Ex. E, FDA, Guidance for Industry, Reformulating Drug Products that Contain Carbomers Manufactured with Benzene at 3 (Dec. 2023) ("Guidance"), https://www.fda.gov/media/175083/download; First Amended Complaint, (hereafter "Compl.") ¶ 20, ECF No. 10. Although these manufacturers are not relevant to Plaintiff's claims at issue in this Motion to Dismiss, it underscores the lack of standing of the putative class.

2

ingredient. *See* Ex. F, Amneal Drug Product Info (identified by ANDA number and NDC); Ex. G, Granules Drug Product Info (identified by ANDA number and NDC). Carbomer is "an ingredient used in a variety of over the counter medicines," Compl. ¶ 3, and it is used in the Products, as well as in the brand product Mucinex, "to create an extended-release phenomenon." Compl. Ex. 1.[2] "[S]ome carbomers are made without benzene and some carbomers are made with benzene . . . ." Compl. ¶ 3.

The United States Pharmacopeia ("USP"), recognized as an "official compendium" by the FDA, publishes monographs that establish specifications for inactive ingredients like carbomers. *See* 21 U.S.C. §§ 321(g)(1), (j), 351(b). Currently, USP contains monographs for several carbomers. The monographs for the five carbomers that are made using benzene as a solvent set limits for benzene measured in parts per million ("ppm"). *See* Guidance at 3.

In December 2023, FDA issued Guidance regarding the five USP monographs for carbomers made using benzene as a solvent. *See id.* The Guidance explains that, at FDA's request, USP issued a Notice of Intent to omit the monographs for these carbomers by August 1, 2025. *Id.* at 1 n.3. That deadline was extended to August 1, 2026. *See* Ex. H, "USP Notice," https://www.uspnf.com/notices/carbomer-omission-ext-imp-date-pub-annc-20240201. Manufacturers using these carbomers "will be required to reformulate to avoid use of these carbomers in their drug products ***once the USP monographs have been removed***." Guidance at 4 (emphasis added). In the meantime, FDA recommends manufacturers use alternative carbomers that are not made with benzene. *Id.* at 3-4. Like any change in drug product

---

[2] "At the pleading stage, the Court must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 700 (N.D. Ill. 2020) (internal citations omitted).

formulation, changing carbomers requires prior FDA approval. *See id.* at 6; 21 C.F.R. § 314.70(b)(1)-(2) (requiring a submission and prior FDA approval (*i.e.*, a "Prior Approval Supplement" or "PAS"), for "changes in the qualitative or quantitative formulation of the drug product, including inactive ingredients"); *id.* § 314.97 (applying § 314.70 to ANDAs). The Guidance also specifically recommends that "[e]ntities that manufacture drug products that may be at risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene at levels above 2ppm." *See* Guidance at 3, n.6.

As shown in publicly available documents from the National Institute of Health, Product made by one of the two manufacturers with FDA approval uses "Carbomer Homopolymer Type B." Ex. G. Carbomer Homopolymer Type B is the same carbomer used in the brand Mucinex formulation, which carbomer Plaintiff concedes is not made with, and does not contain, benzene. Ex. I; Compl. ¶ 20.

Notwithstanding that admission, Plaintiff sued CVS, claiming that "***all*** CVS Maximum Strength Mucus Extended Release sold during the time that he purchased the products, included benzene," *id.* ¶ 19 (emphasis added), and that "had he known the products were adulterated and contained benzene," he would not have bought them, *id.* ¶ 32. The Complaint does not allege that Plaintiff or anyone else tested any finished Product or otherwise confirmed the presence of benzene in any amount; or that any finished Product was recalled due to the presence of benzene. In addition, the Complaint does not allege that Plaintiff could not use the Product he bought, that the Product did not work, or that the Product physically injured him.

### III.  LEGAL STANDARD

"[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169,

4

174 (7th Cir. 2015) (internal citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing," and "must clearly allege facts demonstrating," each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, courts "may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment." *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008); *see also Adams v. Atl. Richfield Co.*, No. 2:18-CV-375-JVB-JPK, 2021 WL 4819608, at *1 (N.D. Ind. Oct. 15, 2021) ("Public records— such as court orders, agency decisions, administrative body reports, and government websites— are appropriate subjects of judicial notice" (citing *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J., in chambers))). On a motion to dismiss, the Court "***must*** consider," in addition to the complaint and documents cited therein, "information that is subject to proper judicial notice." *Hardiman*, 455 F. Supp. at 700 (emphasis added).

IV. **ARGUMENT**

A. **Plaintiff lacks standing because he fails to plausibly plead that he purchased Product containing benzene.**

1. **Plaintiff bears the burden of adequately alleging an injury-in-fact sufficient to demonstrate Article III Standing.**

To establish standing, a plaintiff must plead that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The injury in fact must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). And the injury "must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Here, Plaintiff must plausibly plead that the Product he purchased contained benzene. *See In re Recalled Abbott Infant Formula Prods. Liab. Litig. ("Abbott")*, 97 F.4th 525, 532 (7th Cir. 2024) (dismissing claims where plaintiff failed to plausibly allege that the products they purchased were defective); *Nelson v. John Paul Mitchell Sys.*, 2024 WL 4265198, at *8-10 (N.D. Ill. Sept. 23, 2024) (same); *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1178 (3d Cir. 2024); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014).

2. ***Abbott* controls in this case.**

In this Circuit, a plaintiff seeking compensation for economic loss from purchasing an allegedly contaminated, worthless product may plausibly plead the purchase of a contaminated product in one of two ways. First, he may plead a universal defect that affects every product equally. *See Abbott*, 97 F.4th at 529 (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011)). For example, in *In re Aqua Dots*, "[e]very unit of [the product] contained the toxic adhesive, and ***it was undisputed*** that the products were defective." *See id.* (citing *In re*

6

*Aqua Dots*, 654 F.3d at 749) (emphasis added). Alternatively, he may allege facts demonstrating the contamination was "sufficiently widespread so as to plausibly affect any given product." *Id.* Inversely, "[t]he potential risk of contamination is not sufficient to confer standing." *Id.*

Plaintiff attempts to allege a universal defect by claiming that all Product sold by CVS contains benzene. *See* Compl. ¶ 19. This ignores the publicly available, judicially noticeable fact that one of the two Product manufacturers uses a carbomer Plaintiff concedes is ***not made with, and is free of, benzene***. *See* Exs. G, I; Compl. ¶ 20. The Court need not consider a demonstrably false allegation when deciding a motion to dismiss. *See Word v. Cook Cnty. Dept. of Corr.*, 1995 WL 29636, at *2 (N.D. Ill. Jan. 24, 1995) ("Although this Court must accept as true all well-pleaded allegations in [plaintiff's] Complaint, it is not obligated to do so as to allegations that are demonstrably false.").

Here Plaintiff makes no attempt to plead that the Product he bought contains benzene. Plaintiff alleges that he bought a Product "similar" to that pictured in the Complaint at an unidentified CVS in Chicago, Illinois, sometime between April 2022 and February 2025, Compl. ¶¶ 10, 16. He does not identify the Product manufacturer. And even if Plaintiff had plausibly pled that he purchased a Product made by the manufacturer who uses a carbomer that is made with benzene, he still fails to plausibly plead that the finished form Product he bought actually contained benzene. Plaintiff cites no Product testing nor any other facts to show the presence of benzene in any finished Product. The mere "potential risk" that the Product Plaintiff purchased contained benzene is not sufficient. *See Abbott*, 97 F.4th at 529. Because Plaintiff fails to plead an injury-in-fact, he lacks standing, and his claims should be dismissed in their entirety.

  **B.** <u>**The FDCA preempts all of Plaintiff's claims.**</u>

When federal and state law conflict, the Constitution's Supremacy Clause requires preemption of state law. *See* U.S. Const. art. VI, cl. 2; *Nelson v. Great Lakes Educ. Loan Servs.*,

7

928 F.3d 639, 646 (7th Cir. 2019). Here, the FDCA plainly preempts Plaintiff's claims.

### 1. Plaintiff's omission claims are expressly preempted by 21 U.S.C. § 379r.

Express preemption occurs when a statute includes "explicit pre-emptive language." *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983). The FDCA expressly preempts any state law claim that "relate[s] to the regulation of" an OTC drug and "that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA], the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.)." 21 U.S.C. § 379r(a). Thus, for a plaintiff's claims to survive preemption, the defendant's conduct "must plausibly violate a federal requirement." *Birdsong v. Walgreens, Inc.*, No. 24-cv-07994, 2025 WL 1446400, at *2 (N.D. Ill. May 20, 2025) (citing *Barnes v. Unilever United States Inc.*, 2023 WL 2456385, at *5 (N.D. Ill. Mar. 11, 2023)).

*Birdsong* is a nearly identical case concerning alleged benzene content in OTC guaifenesin products. There, a court in this district concluded that § 379r expressly preempted claims premised on the alleged failure to disclose that the products contained benzene, reasoning that the FDCA prohibits the inclusion of benzene in the product label as it is not an "'intended' component" of the drug. *Birdsong*, 2025 WL 1446400, at *2; *see also* 21 U.S.C. § 352(e); 21 C.F.R. §§ 201.66, 210.3(b)(3), (4). The court also found plaintiffs' affirmative misrepresentation claims preempted because the alleged affirmative safety misrepresentations were "based in Walgreens' failure to disclose the presence of benzene" and thus "not factually different from their [preempted omission] claim." *Id.* at *2.

Here, Plaintiff attempts to avoid *Birdsong* by pleading alleged cGMP violations. *See, e.g.*, Compl. ¶ 62. But it is plain from Plaintiff's allegations, taken as a whole, that his claims

8

are, in fact, based on the alleged failure to disclose that the Product contains benzene. Plaintiff's Complaint directly implicates the Product's labeling, stating that CVS sells "adulterated OTC drugs to consumers *who are unaware*" they contain benzene. *See* Compl. ¶ 61 (emphasis added). Similarly, Plaintiff alleges that he "would not have purchased [the Product] *had he known* the products were adulterated and contained benzene, a known human carcinogen." *Id.* ¶ 32. This is precisely the type of omission claim that is preempted under *Birdsong*. Plaintiff's references to cGMP do not make his claims "factually different" from omission claims that the FDCA clearly preempts. *Birdsong*, 2025 WL 1446400 at *2.

Similarly, and just like the "affirmative misrepresentation" claim in *Birdsong*, Plaintiff's allegation that CVS affirmatively misrepresented that the Products "are similarly safe" to brand Mucinex by "directly invit[ing] Plaintiff and other consumers to compare its product to the brand name version," Compl. ¶ 18, is also factually indistinct from a preempted omission claim. As Plaintiff himself alleges, that claim is a misrepresentation only because "Plaintiff later learned that all CVS Maximum Strength Mucus Extended Release sold during the time he purchased the products, included benzene." *Id.* ¶ 19. Because such allegations are "based in [the retailer's] failure to disclose the presence of benzene," 21 U.S.C. § 379r preempts them. *Birdsong*, 2025 WL 1446400, at *2.

### 2. Plaintiff's adulteration claims are also expressly preempted by 21 U.S.C. § 379r.

Even if Plaintiff's claims were premised on an alleged cGMP violation, and not on CVS's alleged failure to disclose benzene, the FDCA would still expressly preempt them. First, although the FDCA states broadly that a drug is adulterated if the "methods used in, or the facilities or controls used for, manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with [cGMP]," 21 U.S.C. § 351(a)(2)(B),

9

Plaintiff's alleged cGMP violation—the use of a carbomer made with benzene (Compl. ¶ 66)—is not a cGMP issue at all; it is a matter of formulation. *See* 21 U.S.C. § 351(a)(2)(B); *see also* 21 C.F.R. Part 211 (covering organizations and personnel, buildings and facilities, equipment, ***control*** of components and drug product containers and closures, production and process controls, packaging and labeling control, holding and distribution, laboratory controls, records and reports, and returned and salvaged products).

Second, Plaintiff's state law claims are preempted unless they also amount to a violation of the FDCA, *Birdsong*, 2025 WL 1446400, at *2, but the Product manufacturers' selection of the carbomer used in the Product indisputably complies with federal law. The FDCA requires only that if a component "purports to be represented as a drug [component] the name of which is recognized in an official compendium" such as the USP, its "strength [does not] differ from, or its quality or purity [does not] fall[] below, the standard set forth in such compendium." 21 U.S.C. § 321(b); *see also* 21 U.S.C. § 321(g)(1) (defining "drug" to include components of drugs). In the Guidance, FDA has expressly said that it remains legal to use USP-recognized carbomers manufactured with benzene until August 2026, when the USP will omit monographs for those carbomers. *See* Guidance, at 1 n.3; *see also* Ex. H, USP Notice.

Third, as ANDA products, the Product's formulations, including the specifications of ingredients and the finished product, must be approved by FDA and, in fact, ***were approved*** by FDA. *See* 21 U.S.C. § 355(b), (j); 21 C.F.R. § 314.127(a)(6)(i); Exs. A, B (indicating FDA approval of the Products); *see also Eisman*, 2025 WL 241024, at *5 ("When the FDA approved the OTC [] drug product monograph, it did so with full knowledge that [the product] contains benzene. . . . Thus, the FDA approved OTC [] drug products as generally safe and effective, and not adulterated, with the understanding that they would contain some level of benzene");

10

*Howard v. Alchemee*, 2024 WL 4272931, at *9 (C.D. Cal. Sept. 19, 2024) (finding plaintiffs' claim that defendants sold "an inherently adulterated product—amounting to an illegal act—" preempted because it was "inconsistent with the FDA's approval of" the ingredient at issue); *Croci v. Zoll Medical Corp.*, 2025 WL 2307728, at *5 (S.D.N.Y. Aug. 11, 2025) (explaining that a plaintiff "cannot simply make the conclusory allegation that a defendant's conduct violated FDA regulations" and avoid preemption). A product sold in the very form approved by the FDA is not (and cannot be) illegal to sell. Indeed, as *Eisman* recognized, where the FDA approves drug products as safe and effective, "with the understanding that they would contain some level of benzene," a claim challenging the as-approved formulation of that drug is preempted, absent some allegation that the product was manufactured contrary to its FDA-approved specifications. *See Eisman*, 2025 WL 241024, at *5. Here, any purported obligation to use a different carbomer directly conflicts with FDA's approval of the Product. Exs. A, B (indicating FDA approval of the Products). Indeed, as in *Eisman*, Plaintiff here cannot allege that the Product was manufactured against the FDA-approved specifications. *See Eisman*, 2025 WL 241024, at *5. Because Plaintiff's claims impose different requirements, the FDCA expressly preempts them.

### 3. The FDCA impliedly preempts Plaintiff's claims under conflict preemption.

Conflict preemption applies when "compliance with both federal and state regulations is a physical impossibility." *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981). Thus, where state law would require conduct prohibited by or inconsistent with federal law, federal law preempts those state law claims. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480-86 (2013); *Pliva, Inc. v. Mensing*, 564 U.S. 604, 611-15 (2011).

When analyzing conflict preemption in the pharmaceutical context, courts must determine whether a party may unilaterally take action and comply with both state and federal

11

law. *See Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 317-18 (7th Cir. 2018) (concluding that state law claims that would require generic manufacturers to unilaterally change their labels, which is prohibited by federal law, are preempted). Where FDA pre-approval is necessary, a party "c[an]not 'independently satisfy [its] state duties for pre-emption purposes,'" and a plaintiff's state law claims are preempted. *Id.* at 311 (quoting *Pliva*, 564 U.S. at 624).

The FDCA impliedly preempts claims like Plaintiff's against retailer defendants like CVS because retailers have no ability to unilaterally change the product labeling, formulation, or manufacture. *See In re Zantac (Ranitidine) Prods. Liab. Litig. ("Zantac II")*, 548 F. Supp. 3d 1225, 1254-55 (S.D. Fla. 2021) (dismissing economic loss claims against retailers of store-brand drugs because "Plaintiffs ha[d] not alleged nor argued that the Store-Brand Defendants had any greater authority under federal law to change their store-brand ranitidine products' design or labeling than did the [manufacturers]"); *In re Zantac (Ranitidine) Prods. Liab. Litig. ("Zantac I")*, 510 F. Supp. 3d 1234, 1252-54 (S.D. Fla. 2020) (dismissing state law claims against retailer defendants because they "could not correct the alleged misbranding by altering the composition of the drug, nor could the [retailer defendants] alter the drug's label").

CVS does not hold the ANDAs for any of the Products. Thus, Plaintiff cannot plausibly allege that CVS—a retailer—has any ability whatsoever to change the Products' labeling, formulation, or manufacturing process, let alone that it could do so with without prior FDA approval. *See* Guidance at 6 (requiring formulation changes to be made by Prior Approval Supplement when the carbomer performs a modified release function); 21 C.F.R. § 314.70(b)(1)-(2); *id.* § 314.97; *Guilbeau.*, 880 F.3d at 311 (stating that a party cannot unilaterally reformulate and "'independently satisfy [its] state duties for pre-emption purposes'" (quoting *Pliva*, 564 U.S. at 624)). CVS's only option to address the issues about which Plaintiff complains would be "to

12

stop selling the drug altogether which they are not required to do to comply with a state law duty." *Zantac I*, 510 F. Supp. 3d 1234, 1252-53 (citing *Bartlett*, 570 U.S. at 488-91); *see also Bartlett*, 570 U.S. at 488 (calling this "stop-selling" theory "incoherent[t]"and "incompatible with our preemption jurisprudence").

### 4. The FDCA impliedly preempts Plaintiff's claims under *Buckman*.

Plaintiff's claims also are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). *Buckman* preemption stems from the fact that there is no private right of action under the FDCA. *See* 531 U.S. at 349 n.4; 21 U.S.C. § 337(a) (providing no private right of action to enforce the FDCA). Claims under the guise of state law that, at bottom, seek to enforce the requirements of the FDCA are preempted. *See Vanzant v. Hill's Pet Nutrition Inc.*, 2025 WL 296062, at *6 (N.D. Ill. Jan. 24, 2025) (concluding *Buckman* preempted ICFA claims premised on allegations of misbranding and adulteration because "Plaintiffs' unfair practices claim would not give rise to a recovery under ICFA in the absence of the FDCA"); *Daly v. Wonderful Co., LLC*, 2025 WL 672913, at *3 (N.D. Ill. Mar. 3, 2025) (explaining that "[c]ourts have interpreted [§ 337(a)] to impliedly preempt any claims that are based on a contention that the defendant violated the FDCA or a regulation promulgated under the FDCA" and distinguishing claims of affirmative misrepresentations that a food product was "natural" (citations omitted)); *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1207 (8th Cir. 2010) ("[Plaintiffs' claims] are not parallel, they are a frontal assault on the FDA's decision to approve a [product] after weighing the product's benefits against its inherent risks. On this record, the district court properly concluded these claims are preempted.").

Here, taking Plaintiff's Complaint at face value, it seeks to plead state law claims premised solely on the contention that CVS violated the FDCA by selling a product that was adulterated and failed to comply with cGMP because the Product's FDA-approved formulation

13

contains a carbomer made with benzene. This is tantamount to an attempt to privately enforce the FDCA through state law claims, which *Buckman* squarely preempts.[3]

### C. Plaintiff fails to state a claim because he has not plausibly alleged a violation of the FDCA.

#### 1. Plaintiff's ICFA claim must be dismissed because he has failed to plausibly allege the only "unfair act" he identifies—a violation of the FDCA.

The ICFA prohibits "unfair or deceptive acts or practices." *Kahn v. Walmart Inc.*, 107 F.4th 585, 597 (7th Cir. 2024) (citing 815 ILCS 505/2). "To determine whether a practice is unfair within the meaning of the ICFA, courts look to three factors: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers.'" *Kahn*, 107 F.4th at 602 (quoting *Benson v. Fannie May Confection Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019)). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (internal quotation omitted).

Here, the only "unfair act" alleged is the purported cGMP violation. *See* Compl. ¶¶ 61-62. But conclusory allegations that "the presence of benzene 'resulted from Defendants' failure to comply with cGMPs . . . do[] not plausibly identify a specific violation." *See O'Dea v. RB Health* (US) LLC, No. 2:24-CV-07048-SB-BFM, 2025 WL 368969, at *3 (C.D. Cal. Jan. 13, 2025) (citing *Weber v. Allergan, Inc.*, 940 F.3d 1106, 1114 (9th Cir. 2019) (evidence that a particular product was defective is insufficient to show the manufacturer failed to comply with

---

[3] Although some courts have found claims to survive *Buckman* when the applicable state law analog to the FDCA allows private rights of action, *see, e.g.*, *Bausch*, 630 F.3d at 557-58, that exception does not apply here. Illinois' analog to the FDCA, the ILFDCA, categorically does not provide a private right of action. *See Huston v. Conagra Brands, Inc.*, No. 421CV04147SLDJEH, 2022 WL 4647251, at *1 (C.D. Ill. Sept. 30, 2022) ("[T]here is no private right of action under either the FDCA or the ILFDCA.").

14

cGMPs); *Ebrahimi v. Mentor Worldwide LLC*, 804 F. App'x 871, 872 (9th Cir. 2020) (rejecting argument that court can infer cGMP violations from defective product)). Indeed, as discussed above, Plaintiff does not allege—and cannot plausibly allege—that these Products are manufactured outside of their FDA-approved specifications. The FDA has taken no action against the Products, via investigation, recall, or otherwise. Simply put, Plaintiff alleges no facts to plausibly suggest that the Products were manufactured in violation of cGMP or otherwise in violation of the FDCA. Plaintiff has alleged only that CVS lawfully sells FDA-approved Products manufactured according to their FDA-approved specifications. That cannot support an ICFA claim.

### 2. By failing to plausibly allege a violation of the FDCA, Plaintiff fails to allege a sufficient predicate for unjust enrichment.

Plaintiff's claim for unjust enrichment must fail for the same reasons. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). An unjust enrichment claim is "not viable" when it is based on the same, rejected "unfair" conduct of a failed IFCA claim. *See id.* (citing *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)). Here, Plaintiff's ICFA claim and unjust enrichment claim necessarily rely upon the same allegedly "unfair" conduct—the implausibly alleged cGMP violation. *See* Compl. ¶¶ 61, 73. Because Plaintiff has not plausibly alleged "unfair" conduct to support an IFCA claim, his unjust enrichment claim must also be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims with prejudice.

15

Dated: September 26, 2025 **CVS PHARMACY, INC.**

By: /s/ *Robin P. Sumner*
     One of Its Attorneys

Robin P. Sumner
robin.sumner@troutman.com
Troutman Pepper Locke LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
(215) 981-4652